STATE OF NORTH CAROLINA v. TIMMY WAYNE SPEIGHT

No. COA03-776-2

(Filed 18 September 2007)

**1. Sentencing— aggravating factors—not submitted to jury—harmless error**

Errors in not submitting aggravating factors to the jury when sentencing defendant for two counts of involuntary manslaughter arising from impaired driving were harmless. The evidence of knowingly creating a risk to more than one person with a hazardous device was overwhelming and uncontroverted, and the guilty verdicts on the two involuntary manslaughter charges necessarily show that defendant killed another in the course of conduct of each offense.

**2. Sentencing— impaired driving—aggravating factors—not duplicative**

Factors aggravating driving while impaired were not duplicative where the two factors were that defendant's impaired driving caused serious injury to another person and that defendant used a motor vehicle in the commission of a felony that led to the death of two people.

Upon remand from the Supreme Court of North Carolina, appeal by defendant from judgments entered 30 August 2002 by Judge W. Russell Duke, Jr., in Pitt County Superior Court. Originally heard in the Court of Appeals 30 March 2004.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Robert C. Montgomery, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Barbara S. Blackman, for defendant-appellant.*

HUNTER, Judge.

This case comes before us on remand from the Supreme Court of North Carolina in order that we may reexamine the issue of sentencing in light of its recent decision in *State v. Blackwell*, 361 N.C. 41, 638 S.E.2d 452 (2006), *cert. denied*, —— U.S. ——, 167 L. Ed. 2d 1114 (2007). Upon remand from the United States Supreme Court, our Supreme Court in *Blackwell* held that according to *Washington v.*

*Recuenco*, 548 U.S. 212, 165 L. Ed. 2d 466 (2006), the failure to submit a sentencing factor to the jury is subject to harmless error review. *Blackwell*, 361 N.C. at 44, 638 S.E.2d at 455. As this case is now before us, we review the issue of whether the error in Timmy Wayne Speight's ("defendant") sentencing on two involuntary manslaughter convictions and a driving while intoxicated ("DWI") charge was harmless or whether defendant is entitled to a new sentencing hearing. After careful consideration, we find the error to be harmless.

The State's evidence tended to show that James and Leona Newsome were traveling north on Highway 11 during rush hour traffic. Mrs. Newsome warned her husband that defendant's car was approaching from behind at a high rate of speed. Mr. Newsome then saw defendant pass their vehicle in the right-hand lane, pick up speed, and cut in and out of traffic.

Carl Ebron was also traveling northbound on Highway 11. As Mr. Ebron proceeded through a stoplight, he heard tires squealing and saw defendant's red car cut in front of him, go out of control, start skidding, and hit a median. Defendant's vehicle then crossed the median, hit a pole, and crashed head-on into a white Buick heading southbound on Highway 11. The Buick was occupied by fifty-year-old Lynwood Thomas and his twenty-year-old son Donald Thomas ("victims"), both of whom died as a result of the collision.

Michelle Spade was standing in her front lawn at the time of the incident and so witnessed it. She testified that defendant's vehicle "was going every bit of 70/80 [miles per hour.]" The speed limit on the road was fifty-five (55) miles per hour. Ms. Spade added:

> You can pretty much look down and see what's going on. I saw him. Mainly I just saw the car still going in and out, in and out. And it had been raining for a couple of days prior to this going on. So what he was doing was driving and he was trying actually [to] avoid hitting the other cars. So he went to the side then that is when he slid over.

Ms. Spade stated that after defendant's car went onto the median, it spun, then collided with the victims' vehicle, causing the Buick to fly into the air, flip over, and land on its roof. At this point, Ms. Spade called 911.

An EMS unit arrived at the scene after the 911 call. Donald Gerkin, a paramedic, testified that his three-person crew split up to assess the persons in both vehicles and that he went to assess the

occupants of the Buick. Mr. Gerkin determined that neither victim was breathing or had a pulse.

Jeffrey Maye, another first responder, testified that as he was attempting to open defendant's car doors, he noticed the odor of alcohol in defendant's vehicle. Defendant was eventually removed and taken to the hospital.

Officer M.L. Montanye of the Greenville Police Department was also at the scene. While EMTs were working to remove defendant from his vehicle, Officer Montanye put his head in one of the windows broken out by the crash and smelled a slight odor of alcohol. Officer Montanye followed the ambulance to the hospital in order to obtain a chemical test.

At the hospital, Officer Montanye spoke with defendant and later testified that he noticed a moderate odor of alcohol coming from his breath. Based upon that, the severity of the collision, and the statements of the four witnesses with whom he spoke, Officer Montanye was of the opinion that defendant had consumed a sufficient amount of alcohol to appreciably impair his mental and physical faculties and therefore charged defendant with DWI. Officer Montanye read defendant his chemical testing rights, and defendant signed a form acknowledging that he understood his rights. Defendant also signed a consent granting permission for blood samples to be taken. Later, defendant signed a consent form releasing all of his medical records from Pitt Memorial Hospital to the district attorney's office.

The blood sample was turned over to the State Bureau of Investigation ("SBI") for analysis. At trial, Special Agent Aaron Jonich testified that after performing his analysis, he determined that defendant's alcohol concentration was 0.10 at the time of the test. Agent Jonich also stated that the drug analysis he performed revealed the presence of morphine and tetrahydrocannabinol ("THC"). THC is a chemical found in marijuana.

Paul Glover of the Forensic Tests for Alcohol Branch testified that he performed a retrograde extrapolation on both the SBI blood test results and the hospital blood results. The results of both tests indicate that, at the time of the collision, defendant's blood alcohol concentration was 0.13.

Defendant was found guilty of two counts of involuntary manslaughter and one count of DWI. The trial court found two aggravating factors as to each involuntary manslaughter: (1) "defendant

knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person"; and (2) "in the course of conduct, the defendant killed another[.]" The trial court found that the aggravating factors outweighed the mitigating factors and sentenced defendant to two consecutive prison terms of twenty to twenty-four months.

As to the DWI conviction, the trial court found two aggravating factors: (1) defendant "caused, by the defendant's impaired driving at the time of the current offense, serious injury to another person"; and (2) "defendant used a motor vehicle in the commission of a felony that led to the death of two people." The trial court sentenced defendant to twelve months imprisonment to run consecutively with the sentence imposed in the second of the two manslaughter convictions.

The trial court erred by not submitting the aggravating factors to the jury under *Blakely v. Washington*, 542 U.S. 296, 301, 159 L. Ed. 2d 403, 412 (2004). Our Supreme Court, however, has recently determined that *Blakely* errors are subject to harmless error review. *Blackwell*, 361 N.C. at 44, 638 S.E.2d at 455. Thus, the issue before this Court is whether the *Blakely* errors committed by the trial court by finding aggravating factors were harmless beyond a reasonable doubt.

I.

**[1]** As stated, the trial court, by finding the aggravating factors in this case rather than submitting them to a jury for determination, committed a Sixth Amendment error pursuant to *Blakely*. See *Blakely*, 542 U.S. at 301, 159 L. Ed. 2d at 412 (" '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt' "). In *Washington v. Recuenco*, 548 U.S. at 221-22, 165 L. Ed. 2d at 476, the United States Supreme Court held that *Blakely* errors are subject to harmless error review.

Pursuant to *Recuenco*, our Supreme Court has held that the Sixth Amendment error committed in North Carolina when a judge, rather than a jury, finds an aggravating factor is subject to harmless error review. *Blackwell*, 361 N.C. at 44, 638 S.E.2d at 455. The Court set out the following test to determine whether an error is harmless:

In conducting harmless error review, we must determine from the record whether the evidence against the defendant was so

"overwhelming" and "uncontroverted" that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt. The defendant may not avoid a conclusion that evidence of an aggravating factor is "uncontroverted" by merely raising an objection at trial. Instead, the defendant must "bring forth facts contesting the omitted element," and must have "raised evidence sufficient to support a contrary finding."

*Id.* at 49-50, 638 S.E.2d at 458 (internal citations omitted); *see also State v. Heard and Jones*, 285 N.C. 167, 172, 203 S.E.2d 826, 829 (1974) ("before a court can find a Constitutional error to be harmless it must be able to declare a belief that such error was harmless beyond a reasonable doubt").

### A.

The trial court imposed higher sentences for each of the two involuntary manslaughter[1] convictions based on its finding of two aggravating factors: (1) "defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person[,]" N.C. Gen. Stat. § 15A-1340.16(d)(8) (2005); and (2) in the course of his conduct, defendant killed another. We now must address whether the State proved these aggravating factors beyond a reasonable doubt, rendering the trial court's *Blakely* error harmless.

Defendant argues that the finding of the first factor was not established beyond a reasonable doubt. We disagree.

To prove the first aggravating factor found by the trial court, the State must show: (1) "the weapon [or device] in its normal use is hazardous to the lives of more than one person; and (2) . . . a great risk of death was knowingly created." *State v. Rose*, 327 N.C. 599, 605, 398 S.E.2d 314, 317 (1990).

As to whether a vehicle is hazardous to the lives of more than one person "[i]t is well settled in North Carolina that an automobile can be a deadly weapon if it is driven in a reckless or dangerous manner." *State v. Jones*, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000). There being overwhelming and uncontradicted evidence that defendant was

---

1. "Involuntary manslaughter is the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony or naturally dangerous to human life, or (2) a culpably negligent act or omission." *State v. Evangelista*, 319 N.C. 152, 165, 353 S.E.2d 375, 384 (1987).

operating his vehicle in a reckless manner by driving at a high rate of speed, by driving while intoxicated and with THC and morphine present in his blood, and by weaving in and out of traffic, we find that the first element of proof was conclusively established at the trial court. In other words, defendant's vehicle qualifies as "a weapon or device [that in its normal use is] hazardous to the lives of more than one person." N.C. Gen. Stat. § 15A-1340.16(d)(8).

As to whether a great risk of death to more than one person was knowingly created, it is sufficient to show that a reasonable person would have known his conduct created such risk. *See State v. Carver*, 319 N.C. 665, 667, 356 S.E.2d 349, 351 (1987) (holding that any reasonable person should know firing a rifle several times into a crowd of people creates a great risk of death). This Court has held that "any reasonable person should know that an automobile operated by a legally intoxicated driver is reasonably likely to cause death to any and all persons who may find themselves in the automobile's path." *State v. McBridge*, 118 N.C. App. 316, 319-20, 454 S.E.2d 840, 842 (1995); *see also State v. Fuller*, 138 N.C. App. 481, 488, 531 S.E.2d 861, 866-67 (holding evidence of the aggravating factor was sufficient where motor vehicle collision was caused by the impaired defendant), *disc. review denied*, 353 N.C. 271, 546 S.E.2d 120 (2000). Here, we find that the State put on evidence before the jury that established beyond a reasonable doubt that a reasonable person would have known that a great risk of death had been created.

As to the second element of the first aggravating factor, that a great risk of death was knowingly created, the following uncontroverted evidence was presented: Defendant's blood alcohol concentration was 0.10 two hours after the collision; defendant's blood alcohol concentration would have been 0.13 at the time of the accident; defendant had morphine and THC in his system; defendant was speeding, lost control of his vehicle, skidded across a median where he hit a pole, and then crashed head-on into the victims' vehicle; and, per the testimony of three witnesses, defendant was driving at a high rate of speed in heavy traffic. The fact that defendant might have stopped for traffic signals or that other vehicles were going at a similar speed does nothing to contradict the evidence that at the time of the crash, defendant was traveling at a high rate of speed, after drinking, and through heavy traffic. Accordingly, because the evidence supporting the aggravating factor was overwhelming and uncontroverted, there can be no question that a rational jury would have found that defendant knowingly created a great risk of death to more than

one person by means of a weapon or device that would normally be hazardous to more than one person.

As to the second aggravating factor, that defendant killed another, defendant acknowledges that the jury's guilty verdicts as to two involuntary manslaughter charges necessarily shows it found beyond a reasonable doubt that in the course of conduct as to each offense defendant killed another. The general rule is that "[e]vidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation[.]" N.C. Gen. Stat. § 15A-1340.16(d). Here, however, there were two involuntary manslaughter convictions. Accordingly, the trial court did not err because "[e]vidence used to prove an element of one offense may also be used to support an aggravating factor of a separate joined offense." *State v. Crockett*, 138 N.C. App. 109, 119, 530 S.E.2d 359, 365 (2000) (citing *State v. Farlow*, 336 N.C. 534, 444 S.E.2d 913 (1994)). Thus, we find the errors committed by the trial court in not submitting the aggravating factors to the jury for determination to be harmless.

B.

[2] Finally, defendant raises an issue in addition to the one this Court has directed the parties to address: That the two aggravating factors are duplicative. While this is not what the parties were asked to address in their briefs, the issue goes to whether the error committed by the trial court was harmless. Accordingly, we address this issue.

Evidence supporting "two aggravating factors may partially overlap, as long as there is some distinction in the evidence supporting each aggravating factor." *State v. Beck*, 359 N.C. 611, 616, 614 S.E.2d 274, 278 (2005). The evidence supporting the aggravating factors in the instant case has "some distinction." The first aggravating factor requires evidence that defendant was impaired, while the second does not. Furthermore, the second aggravating factor requires evidence that defendant committed a felony, while the first does not. We thus hold that the aggravating factors in this case are not duplicative.

The trial court found two aggravating factors as to defendant's conviction for driving while impaired: (1) that defendant "caused, by [his] impaired driving at the time of the current offense, serious injury to another person"; and (2) that defendant "used a motor vehicle in the commission of a felony that led to the death of two people."

For the reasons stated in subsection A above, we also conclude that the evidence supporting the aggravating factors found as to the DWI is overwhelming and uncontroverted. Accordingly, the error committed by the trial court was harmless.

In summation, we hold that the *Blakely* errors committed by the trial court were harmless and that the aggravating factors were not duplicative. Defendant's arguments to the contrary are rejected.

Harmless error.

Judges WYNN and TYSON concur.