IN THE SUPREME COURT OF NORTH CAROLINA

No. 119A23

Filed 18 October 2024

STATE OF NORTH CAROLINA

v.

JASON WILLIAM KING

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 288 N.C. App. 459 (2023), vacating a judgment entered on 18 November 2021 by Judge Karen Eady-Williams in Superior Court, Buncombe County, and remanding the case for a new sentencing hearing. Heard in the Supreme Court on 13 February 2024.

*Joshua H. Stein, Attorney General, by Kathryne E. Hathcock, Special Deputy Attorney General, and Christopher W. Brooks, Special Deputy Attorney General, for the State-appellant.*

*Caryn Strickland for defendant-appellee.*

ALLEN, Justice.

A divided panel of the Court of Appeals interpreted the sentencing statute for impaired driving offenses to require that defendant Jason William King receive a new sentencing hearing because the trial judge found aggravating factors instead of submitting them to the jury. We do not read the statute to require resentencing if the trial judge's error did not prejudice defendant. We therefore reverse the decision of

the Court of Appeals as it pertains to defendant's impaired driving offense and remand this case to that court for a harmless error determination.

On 30 August 2021, the District Court, Buncombe County, convicted defendant of driving while impaired (DWI), reckless driving, possession of marijuana, and possession of marijuana paraphernalia. The district court found the existence of an aggravating factor but concluded that it was substantially counterbalanced by a mitigating factor. Proceeding under N.C.G.S. § 20-179, the sentencing statute for DWI offenses, the district court imposed Level IV punishment. Specifically, the court sentenced defendant to 120 days of imprisonment but suspended the punishment and placed defendant on twelve months of supervised probation. The district court also sentenced defendant to an active term of seven days in custody and ordered defendant to pay a $100 fine and court costs.

Defendant appealed to the Superior Court, Buncombe County, where on 18 November 2021, a jury found him guilty of DWI and reckless driving but acquitted him of the remaining charges. Prior to sentencing defendant, the superior court judge found the existence of three aggravating factors: (1) "[t]he driving of the defendant was especially reckless;" (2) "[t]he driving of the defendant was especially dangerous;" and (3) "defendant was convicted . . . of [misdemeanor] death by motor vehicle" in August 2015. Unlike the district court, the superior court judge did not find the existence of any mitigating factors. Based on the three aggravating factors and the absence of any mitigating factors, the superior court judge imposed Level III

punishment: six months of imprisonment, suspended pending defendant's completion of thirty-six months of supervised probation; an active sentence of three days in custody; and payment of a $500 fine and court costs.

Defendant filed a notice of appeal from the judgment of the superior court. He subsequently filed a petition for writ of certiorari asking the Court of Appeals to review his case even if it concluded "that his right to appeal was waived because of failure to comply with the technical requirements of [Rule 4 of the North Carolina Rules of Appellate Procedure]." The Court of Appeals allowed the petition for writ of certiorari.

On appeal, defendant argued that the trial court erred by finding aggravating factors because "such factors must be decided by a jury."[1] *State v. King*, 288 N.C. App. 459, 464 (2023). The Court of Appeals agreed. Citing the decision of the United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296 (2004), the Court of Appeals explained that a defendant's right to a jury trial under the Sixth Amendment to the United States Constitution is violated when a trial judge inflicts punishment beyond

---

[1] Defendant also argued that (1) the superior court erred by denying his motion to dismiss the charges against him and (2) he was entitled to a new sentencing hearing on his reckless driving conviction. Because the dissenting judge in the Court of Appeals did not disagree with the majority on those issues, they are not properly before this Court. *See* N.C. R. App. P. 16(b) ("When the sole ground of the appeal of right is the existence of a dissent in the Court of Appeals, review by the Supreme Court is limited to a consideration of those issues that are . . . specifically set out in the dissenting opinion as the basis for that dissent . . . .").

what the jury's verdict alone authorizes.[2] *Id.* at 465. The court further noted that the General Assembly amended the DWI sentencing statute in 2006 to remove the statutory authority of trial judges to find contested aggravating factors in DWI sentencing proceedings. *Id.* (citing The Motor Vehicle Driver Protection Act of 2006, S.L. 2006-253, § 23, 2006 N.C. Sess. Laws 1178, 1207). In particular, the legislature added N.C.G.S. § 20-179(a1)(2) to the statute. Subsection 20-179(a1)(2) "took the determination of aggravating factors out of the hands of the trial judge and placed it with the jury." *Id.*

Though unanimous in holding that the trial court erred, the Court of Appeals split over whether defendant should receive a new sentencing hearing. The majority held that resentencing is required whenever a trial judge finds aggravating factors in violation of N.C.G.S. § 20-179(a1)(2). *Id.* at 467. In reaching this conclusion, the majority conceded that both the Supreme Court and this Court have determined that the Sixth Amendment does not require resentencing for *Blakely* errors that are harmless beyond a reasonable doubt. *Id.* at 465 (citing *Washington v. Recuenco*, 548 U.S. 212 (2006); *State v. Blackwell*, 361 N.C. 41 (2006); *State v. Speight*, 186 N.C. App. 93 (2007)). Nonetheless, the majority concluded that N.C.G.S. § 20-179(a1)(2)

---

[2] The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI. Although the Sixth Amendment right to a jury trial did not originally extend to criminal trials in state courts, the Due Process Clause of the Fourteenth Amendment made it applicable to such proceedings. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020).

mandates resentencing when *Blakely* errors occur during DWI sentencing proceedings, regardless of whether the errors prejudiced the defendant. *Id.* at 466–67.

Observing that the General Assembly "is free to provide [criminal defendants with] more protection than constitutionally required," the majority concluded that the legislature deliberately provided extra protection to persons convicted of DWI offenses when it added N.C.G.S. § 20-179(a1)(2) to the DWI sentencing statute in 2006. *Id.* at 466. Given the wording of N.C.G.S. § 20-179(a1)(2) and the timing of its enactment, the majority reasoned that the legislature did not intend for violations of N.C.G.S. § 20-179(a1)(2) to receive harmless error review. *Id.* at 466.

> Since the relevant federal cases provide the bare minimum, and all relevant state cases are distinguishable because they were decided prior to the modification of the statute where it is clear from the timing and language of the statute that the legislature intended to change the standards adopted by our courts, we hold aggravating factors must be decided by the jury or the case must be remanded for a new sentencing hearing.

*Id.* at 467.

The dissenting judge disagreed with the majority's interpretation of N.C.G.S. § 20-179(a1)(2). In his view, the General Assembly enacted the provision to comply with *Blakely*, not to create extra sentencing protections for persons convicted of DWI. *Id.* at 469 (Gore, J., dissenting). Consequently, he maintained that "[t]he trial court's failure to abide by [N.C.G.S. § 20-179(a1)(2)] leads to harmless error review, not reversible error." *Id.* The dissenting judge further opined that the superior court

judge's error in this case was harmless because the evidence supporting the aggravating factors "was so overwhelming and uncontroverted that any rational fact-finder would have found the disputed aggravating factor[s] beyond a reasonable doubt." *Id.* (quoting *Blackwell*, 362 N.C. at 49).

On 5 May 2023, the State appealed to this Court. At the time, N.C.G.S. § 7A-30(2) afforded the State an appeal of right based on the dissent in the Court of Appeals. *See* Current Operations Appropriations Act of 2023, S.L. 2023-134, § 16.21(d)–(e), https://www.ncleg.gov/Sessions/2023/Bills/House/PDF/H259v7.pdf (eliminating right of appeal based on dissents for cases filed in the Court of Appeals on or after 3 October 2023).

"We review a lower court's interpretation of statutes de novo." *Morris v. Rodeberg*, 385 N.C. 405, 409 (2023) (emphasis omitted). "Under a de novo review, the [C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337 (2009) (internal quotation marks omitted) (emphasis omitted).

This case asks us to decide whether a trial judge's finding of aggravating factors in violation of the DWI sentencing statute automatically entitles a defendant to a new sentencing hearing. In urging us to affirm the decision of the Court of Appeals, defendant argues that the plain language of N.C.G.S. § 20-179(a1)(2) requires juries to find any contested aggravating factors and thus trial courts have no discretion to deviate from this procedure. He asserts that reviewing violations of

N.C.G.S. § 20-179(a1)(2) for harmlessness contradicts the provision's unambiguous text and renders the provision essentially meaningless. Defendant further contends that harmless error review does not extend to violations of N.C.G.S. § 20-179(a1)(2) because the General Assembly intended the provision to "expand[ ] on the minimum constitutional protections" set out in *Blakely* and related cases.

Notwithstanding defendant's arguments, we hold that the Court of Appeals erred in refusing to apply harmless error review to the superior court judge's finding of aggravating factors. The finding of aggravating factors by a trial judge contrary to N.C.G.S. § 20-179(a1)(2) does not constitute reversible error if the error was harmless.

To explain why we so hold, we turn first to the text of N.C.G.S. § 20-179(a1)(2). *See N.C. Farm Bureau Mut. Ins. Co. v. Hebert*, 385 N.C. 705, 711 (2024) ("The primary goal of statutory interpretation is to accomplish legislative intent, which, in the first instance, is discerned from the plain language of the enactment. . . . This Court may turn to other sources to determine legislative intent, including 'the spirit of the act,' only if the statute is ambiguous or susceptible to multiple interpretations.").

> The defendant may admit to the existence of an aggravating factor, and the factor so admitted shall be treated as though it were found by a jury . . . . If the defendant does not so admit, *only a jury may determine if an aggravating factor is present. . . .* The State bears the burden of proving beyond a reasonable doubt that an aggravating factor exists . . . .

N.C.G.S. § 20-179(a1)(2) (2023) (emphasis added).

Without question, this provision requires a jury—not a judge—to decide whether the State has established the existence of contested aggravating factors beyond a reasonable doubt. On the other hand, the provision nowhere states that a violation automatically entitles a defendant to a new sentencing hearing.

According to defendant, the "unequivocal" nature of the wording used in N.C.G.S. § 20-179(a1)(2) implicitly mandates that our appellate courts vacate sentences imposed in contravention of its terms. We do not believe this inference is justified. The *Blakely* decision itself employs similarly categorial language: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum *must* be submitted to a jury, and proved beyond a reasonable doubt." 542 U.S. at 301 (emphasis added) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Yet, as noted above, the Supreme Court has ruled that *Blakely* errors do not constitute reversible error if they are harmless beyond a reasonable doubt. *Recuenco*, 548 U.S. at 222.

For defendant to prevail, we would have to conclude that the General Assembly meant for N.C.G.S. § 20-179(a1)(2) to provide protection beyond what the Sixth Amendment requires for *Blakely* errors. Interestingly, the Court of Appeals majority conceded that the legislature "likely" added N.C.G.S. § 20-179(a1)(2) to the DWI sentencing statute "to provide defendants [convicted of DWI] the protections articulated in *Blakely*." *King*, 288 N.C. App. at 466–67. In our view, there is no "likely" about it. The legislature enacted N.C.G.S. § 20-179(a1)(2) to bring DWI sentencing

into compliance with *Blakely*; it did not mean to require resentencing for *Blakely* errors that do not prejudice defendants.

The legislative intent behind N.C.G.S. § 20-179(a1)(2) seems clear when we consider the subsection together with an earlier and nearly identical provision in the Structured Sentencing Act.

> The defendant may admit to the existence of an aggravating factor, and the factor so admitted shall be treated as though it were found by a jury . . . . If the defendant does not so admit, *only a jury may determine if an aggravating factor is present in an offense.*

N.C.G.S. § 15A-1340.16(a1) (2023) (emphasis added) (originally enacted as Act to Amend State Law Regarding the Determination of Aggravating Factors in a Criminal Case to Conform with the United States Supreme Court Decision in Blakely v. Washington, S.L. 2005-145, § 1, 2005 N.C. Sess. Laws 253, 253).

The Structured Sentencing Act governs sentencing for most non-DWI offenses. *See* N.C.G.S. § 15A-1340.10 (2023). Originally, it entrusted trial judges with the responsibility of determining the existence of aggravating factors. An Act to Provide for Structured Sentencing in North Carolina Consistent with the Standard Operating Capacity of the Department of Correction and Local Confinement Facilities and to Redefine State and County Responsibilities for the Confinement of Misdemeanants, ch. 538, § 1, 1993 N.C. Sess. Laws 2298, 2304–06.

Subsection 15A-1340.16(a1) is one in a series of amendments that the legislature made to the Structured Sentencing Act in 2005. *See* S.L. 2005-145, § 1,

2005 N.C. Sess. Laws at 253–57. By enacting N.C.G.S. § 15A-1340.16(a1), the legislature transferred the responsibility for finding contested aggravating factors from judges to juries.

It appears obvious to us that the General Assembly regarded this change to the Structured Sentencing Act as a codification of *Blakely*. No great powers of deduction are needed to reach this conclusion. For one thing, the title of the 2005 legislation unambiguously states that the legislation's main purpose was to incorporate *Blakely* into the Structured Sentencing Act. *See* S.L. 2005-145, 2005 N.C. Sess. Laws 253. Not surprisingly, then, we have referred to the 2005 legislation as "the *Blakely* Act." *Blackwell*, 361 N.C. at 49; *see also Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 812 (1999) ("[T]his Court has stated that the title of an act should be considered in ascertaining the intent of the legislature."). Likewise, N.C.G.S. § 15A-1340.16(a1) achieves the *Blakely* Act's stated purpose by prohibiting trial judges from determining the existence of disputed aggravating factors.[3] Trial judges who proceed in accordance with the statute will not commit *Blakely* errors.

The *Blakely* Act does not expressly address whether the impermissible finding of aggravating factors by trial judges in violation of N.C.G.S. § 15A-1340.16(a1) always constitutes reversible error. Moreover, when the General Assembly passed

---

[3] The *Blakely* Act did impose some requirements not mandated by *Blakely* itself. For example, the *Blakely* Act requires the State to give written notice of any aggravating factors it intends to use at least thirty days before trial or plea of guilty or no contest unless the defendant waives notice. N.C.G.S. § 15A-1340.16(a6). We express no opinion regarding the impact of violations of those provisions.

the *Blakely* Act, neither the Supreme Court nor this Court had yet said whether *Blakely* errors could be reviewed for harmlessness.[4] There was good reason to anticipate, however, that *Blakely* errors would be subject to harmless error review.

Like everyone else, judges make mistakes. With this reality in mind, "this Court has said on numerous occasions . . . [that] litigants are not entitled to receive 'perfect' trials; instead, they are entitled to receive 'a fair trial, free of prejudicial error.'" *State v. Malachi*, 371 N.C. 719, 733 (2018) (quoting *State v. Ligon*, 332 N.C. 224, 243 (1992)). This principle holds true even for constitutional errors in criminal trials. "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis."[5] *Rose v. Clark*, 478 U.S. 570, 579 (1986). Put differently, constitutional errors that do not prevent defendants from receiving fair trials are not grounds for reversal. *See id.* (remarking that most constitutional errors

---

[4] Although this Court initially held that *Blakely* errors were not subject to harmless error review, we did so in an opinion that was not issued until the day after the *Blakely* Act went into effect. *See State v. Allen*, 359 N.C. 425, 448 (2005), *withdrawn*, 360 N.C. 569 (2006). We reversed our position after the Supreme Court clarified that resentencing is not necessary when *Blakely* errors are harmless beyond a reasonable doubt. *Recuenco*, 548 U.S. at 221–22; *Blackwell*, 361 N.C. at 44–45.

[5] Some constitutional errors are "structural, and thus subject to automatic reversal." *Neder v. United States*, 527 U.S. 1, 8 (1999) (internal quotation marks omitted). However, the Supreme Court "ha[s] found structural errors only in a very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468 (1997) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)) (complete denial of right to counsel); *see also Tumey v. Ohio*, 273 U.S. 510 (1927) (biased trial judge); *Vasquez v. Hillery*, 474 U.S. 254 (1986) (racial discrimination in grand jury selection); *McKaskle v. Wiggins*, 465 U.S. 168 (1984) (denial of right to self-representation); *Waller v. Georgia*, 467 U.S. 39 (1984) (denial of right to public trial); *Sullivan v. Louisiana*, 508 U.S. 275 (1993) (erroneous reasonable doubt instruction).

are subject to harmless error analysis because "[t]he thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments"). The General Assembly codified this understanding in N.C.G.S. § 15A-1443(b), which declares that a constitutional error in a criminal trial is not prejudicial if the State can "demonstrate, beyond a reasonable doubt, that the error was harmless." N.C.G.S. § 15A-1443(b) (2023).

Since the default rule is that constitutional errors are subject to review for harmlessness, the General Assembly undoubtedly realized that the courts could end up applying harmless error analysis to *Blakely* errors. *See State v. S. Ry. Co.*, 145 N.C. 495, 542 (1907) ("The Legislature is presumed to know the existing law and to legislate with reference to it."). Thus, if it had intended the *Blakely* Act to go beyond the constitutional minimum and mandate automatic reversal for *Blakely* errors, the legislature would have said so somewhere in the legislation. Finding no such statement, we perceive no such legislative intent. It follows that a trial judge's finding of a contested aggravating factor in violation of the *Blakely* Act does not entitle a defendant to relief unless the error prejudiced the defendant.

This brings us back to the DWI sentencing statute. The General Assembly copied the key language in N.C.G.S. § 20-179(a1)(2) nearly verbatim from N.C.G.S. § 15A-1340.16(a1). This fact alone strongly indicates that the legislature expected *Blakely* errors to receive the same treatment under either provision. Additionally, we do not know of any obvious policy reason why the General Assembly would want

individuals convicted of DWI to enjoy more protection from *Blakely* errors than persons convicted of other offenses. In short, the legislature intended harmless error review to apply to aggravating factors found by trial judges in violation of either N.C.G.S. § 15A-1340.16(a1) or N.C.G.S. § 20-179(a1)(2).

Consistent with our view of the legislative intent behind N.C.G.S. § 20-179(a1)(2), the trial judge's finding of aggravating factors in this case is subject to review for harmlessness. In other words, resentencing is not necessary unless the violation of N.C.G.S. § 20-179(a1)(2) prejudiced defendant.

The rules for determining harmless error vary depending on whether a defendant has asserted the denial of a constitutional right or a statutory right. As explained above, when a defendant seeks relief for the denial of a constitutional right, the burden is on the State to prove harmlessness beyond a reasonable doubt. N.C.G.S. § 15A-1443(b). Here, however, defendant opted against pursuing a *Blakely* claim directly under the Sixth Amendment; rather, he based his request for a new sentencing hearing solely on the trial judge's violation of N.C.G.S. § 20-179(a1)(2).

When a defendant requests relief for the denial of a statutory right, N.C.G.S. § 15A-1443(a) places the burden of demonstrating prejudice squarely on the defendant. N.C.G.S. § 15A-1443(a). In most circumstances, satisfying this burden requires the defendant to show "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial

out of which the appeal arises."[6] *Id.* Hence, defendant cannot establish grounds for resentencing in this case absent a reasonable possibility that, but for the trial judge's violation of N.C.G.S. § 20-179(a1)(2), he would have been sentenced at a lower level.[7]

We see no merit in defendant's contention that applying harmless error review to violations of N.C.G.S. § 20-179(a1)(2) will render the provision meaningless. It is true that most trial court errors are not prejudicial; however, it is also true that our appellate courts often find prejudicial error pursuant to N.C.G.S. § 15A-1443(a). *See, e.g., State v. Aguilar*, 292 N.C. App. 596, 606 (2024) (holding the trial court's erroneous admission of testimony prejudiced the defendant).

Finally, in ruling for defendant, the Court of Appeals majority relied on *State*

---

[6] Subsection 15A-1443(a) further provides that prejudice "exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se." N.C.G.S. § 15A-1443(a). Since we conclude that violations of N.C.G.S. § 20-179(a1)(2) do not create prejudice as a matter of law and are not reversible error per se, this standard does not apply here.

[7] Our dissenting colleagues argue that, if harmless error analysis applies to violations of N.C.G.S. § 20-179(a1)(2), then the test for prejudice should be whether "a trial court's error affects the level of punishment imposed." Under that approach, prejudice would exist here merely because the trial judge's finding of aggravating factors resulted in a Level III sentence rather than a Level IV sentence.

The prejudice test proposed by our dissenting colleagues conflicts with our conclusion that the legislature enacted N.C.G.S. § 20-179(a1)(2) to comply with *Blakely*. To have a valid *Blakely* claim, a defendant must show both (1) that the trial judge found a contested aggravating factor *and* (2) that the trial judge relied on the factor to inflict a greater punishment than the jury's verdict alone would allow. *State v. Norris*, 360 N.C. 507, 516 (2006). Thus, if prejudice could be shown simply by the imposition of enhanced punishment, then every *Blakely* error would necessarily amount to reversible error under the Sixth Amendment. Of course, the Supreme Court and this Court have said that is not so. *See, e.g., Recuenco*, 548 U.S. at 221–22 (holding that *Blakely* errors receive harmless error review). In effect, then, our dissenting colleagues' proposed prejudice test is just another way of interpreting N.C.G.S. § 20-179(a1)(2) to go beyond *Blakely*.

*v. Geisslercrain*, 233 N.C. App. 186 (2014). According to the majority, *Geisslercrain* "did not apply harmless error and evaluate whether . . . [an aggravating] factor existed but decided the finding of that factor placed the defendant at another DWI Level punishment, violating *Blakely*, and therefore vacated the sentence."[8] *King*, 288 N.C. App. at 466 (citing *Geisslercrain*, 233 N.C. App. at 191). To the extent that it conflicts with this opinion, *Geisslercrain* is overruled.

The Court of Appeals majority incorrectly construed N.C.G.S. § 20-179(a1)(2) to require resentencing whenever a trial judge in a DWI sentencing proceeding finds contested aggravating factors. It should have examined whether the superior court judge's finding of aggravating factors prejudiced defendant. Accordingly, we reverse the decision of the Court of Appeals as to defendant's DWI offense and remand this case to that court for a harmless error determination.

REVERSED AND REMANDED.

---

[8] The Court of Appeals majority declined to follow the pre-*Geisslercrain* case of *State v. McQueen*, 181 N.C. App. 417 (2007), partly on the ground that "*McQueen* was decided prior to the 1 December 2006 amendment to [N.C.G.S.] § 20-179(a1)(2)." *King*, 288 N.C. App. at 466. In fact, the *McQueen* decision was not published until 16 January 2007.

Justice EARLS dissenting.

This case involves Mr. King's sentence pursuant to N.C.G.S. § 20-179 (DWI statute or DWI sentencing statute), which provides the procedure for determining aggravating factors following a conviction for impaired driving. There are two questions before this Court. The first is whether a harmless error analysis applies to violations of subsection 20-179(a1)(2). Next, if the harmless error standard does apply, then the question is whether the error in this case was harmless. I disagree with my colleagues that the harmless error standard applies to violations of subsection 20-179(a1)(2) because I read the terms of the statute to provide greater protection than that required by the United States Constitution under *Blakely v. Washington*, 542 U.S. 296 (2004), and *Washington v. Recuenco*, 548 U.S. 212 (2006). Further, even if harmless error were the standard, I disagree with the majority that remand to the Court of Appeals for its assessment of harmful error is the appropriate relief in this case. Rather I would hold that where, as here, the trial court's statutory violation affected the level at which the defendant was sentenced and where the facts support that a jury could have come to a different conclusion as to the aggravating factor, prejudice is established and the defendant is entitled to a new sentencing hearing. Therefore, I respectfully dissent.

The text of the statute is clear, in cases where a defendant declines to admit an aggravating factor exists, "only a jury may determine if an aggravating factor is

present." N.C.G.S. § 20-179(a1)(2) (2023). In this case, the parties have not argued that Mr. King admitted to the presence of an aggravating factor and no aggravating factors were submitted to the jury. Despite this, the trial court concluded, on its own, that three aggravating factors were present: (1) Mr. King had a previous misdemeanor conviction for death by motor vehicle; (2) Mr. King's driving was "especially reckless"; and (3) Mr. King's driving was "especially dangerous." Mr. King was sentenced to six months in custody, suspended for thirty-six months of supervised probation. This sentence is the statutory maximum for a Level Three offender. *See* N.C.G.S. § 20-179(i). As a special condition of probation, the court also imposed a seventy-two-hour active sentence, with credit for time served. Pursuant to Mr. King's reckless driving conviction, the trial court further imposed a sentence of forty-five days in custody, which it suspended for thirty-six months of supervised probation.

The trial court's reliance on these aggravating factors during sentencing was problematic for at least three reasons: (1) it misapplies the clear and unambiguous text of subsection 20-179(a1)(2), which states that only a jury may find aggravating factors; (2) due to this misapplication, Mr. King was incorrectly sentenced at a higher offender level; and (3) based on the facts of this case, it is unknown whether a jury would have found the presence of the "especially reckless" aggravating factor at all.

## I.   N.C.G.S. § 20-179(a1)(2)

**A. Statutory Background**

Before 2006, the applicable version of the DWI sentencing statute required the trial judge to hold a sentencing hearing "to determine whether there [were] aggravating or mitigating factors" present. Act of Oct. 14, 1998, S.L. 1998-182, § 25, 1998 N.C. Sess. Laws 592, 618. This statute was amended in 2006, and now provides that "only a jury may determine if an aggravating factor is present." N.C.G.S. § 20-179(a1)(2); *see also* The Motor Vehicle Driver Protection Act of 2006, S.L. 2006-253, § 23, 2006 N.C. Sess. Laws 1178, 1207. Similarly, in 2005, the General Assembly passed An Act to Amend State Law Regarding the Determination of Aggravating Factors in a Criminal Case to Conform with the United States Supreme Court Decision in Blakely v. Washington, S.L. 2005-145, 2005 N.C. Sess. Laws 253 (the Blakely Act). The changes made by the Blakely Act applied in part to N.C.G.S. § 15A-1340.16, which addresses the finding of aggravating and mitigating factors in criminal cases. *Id.* § 1, 2005 N.C. Sess. Laws at 253–57. Following the Blakely Act, under section 15A-1340.16, "only a jury may determine if an aggravating factor is present in an offense." N.C.G.S. § 15A-1340.16(a1) (2023).

The General Assembly's amendment of subsection 20-179(a1)(2), as well as its passing of the Blakely Act, followed the United States Supreme Court's decision in *Blakely*, 542 U.S. 296. *See* S.L. 2005-145, 2005 N.C. Sess. Laws at 253; S.L. 1998-182, § 25, 1998 N.C. Sess. Laws at 618. In *Blakely*, the Court determined that "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the

judge exceeds his proper authority." 542 U.S. at 304 (cleaned up). This results in a Sixth Amendment violation. *Id.* at 305. Later, in *Recuenco*, the Court held that a trial court's failure to submit a sentencing factor to the jury is not structural error. 548 U.S. at 222.

Following *Blakely*, *Recuenco*, and amendments to section 15A-1340.16, this Court issued its opinion in *State v. Blackwell*, 361 N.C. 41 (2006), which although governed by *Blakely*, was not governed by the statutory changes made under the Blakely Act. *See State v. Ward*, 364 N.C. 157, 170 (2010) (Brady, J., concurring in the result only). Likewise, while the Court of Appeals' decision in *State v. McQueen* also occurred after the 2006 amendments to subsection 20-179(a1)(2), the court applied the prior version of the statute, which allowed the judge to find an aggravating factor. 181 N.C. App. 417, 422 (2007). Thus, while *Blackwell* and *McQueen* may comport with the United States Constitution's requirements arising under *Blakely*, they did not address the subsequent statutory changes at issue here in subsection 20-179(a1)(2).

Instead, the unique requirements of the 2006 amendments to the DWI statute were first recognized in *State v. Geisslercrain*, 233 N.C. App. 186 (2014). There, a trial court sentenced a defendant to a Level Four punishment after erroneously finding, for itself, that an aggravating factor was present. *Id.* at 191. Had the trial court not erroneously found such a factor, it would have been required under the statute to sentence the defendant to a lesser Level Five punishment. *Id.* (citing

N.C.G.S. § 20-179(f)(3)). Because "the aggravating factor in this case, which was improperly found by the judge, 'increase[d] the penalty for [the] crime beyond the prescribed maximum,' " *id.* at 191 (quoting *Blakely*, 542 U.S. at 301), the court vacated the sentence and remanded for an entry of a Level Five punishment, *id.* at 194.

**B. Mr. King's Case**

### 1. *Section 20-179 precludes harmless error review where a jury does not find that an aggravating factor is present.*

Since the precedents from this Court are distinguishable, the proper standard of error review when a trial court violates the current version of subsection 20-179(a1)(2) is a matter of first impression. I would hold that a faithful reading of the plain text of the statute requires that such a violation is reversible error that entitles a defendant to a new sentencing hearing.

The language of the DWI statute is plain. It provides that "only a jury may determine if an aggravating factor is present." N.C.G.S. § 20-179(a1)(2). Our Court has long held that "[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *State v. White*, 372 N.C. 248, 251 (2019) (quoting *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209 (1990)).

Our General Assembly can amend state law to grant greater protections than the United States Constitution requires. *State v. Carter*, 322 N.C. 709, 713 (1988); *see also State v. King*, 288 N.C. App. 459, 466 (2023). It did so here. By stating that

"only a jury may determine" the presence of an aggravating factor, N.C.G.S. § 20-179(a1)(2), the legislature expanded the procedural protections for defendants subject to sentencing under the DWI statute—a proper use of its statutory authority, *see Carter*, 322 N.C. at 713 (reinforcing that North Carolina can provide its citizens with more protection than the United States Constitution requires).

The majority concedes in a footnote that the statute goes beyond *Blakely*'s constitutional floor with other mandates, like requiring the State to give written notice to the defendant of any aggravating factors it intends to use. Yet it reasons the General Assembly "would have said so" if it meant to mandate more than harmless error review for statutory violations. This reasoning does not give proper credit to the General Assembly's clear and unambiguous language and our presumption that "the Legislature chose its words with due care" when enacting legislation. *See C Invs. 2, LLC v. Auger*, 383 N.C. 1, 10 (2022) (citing *Sellers v. Friedrich Refrigerators, Inc.*, 283 N.C. 79, 85 (1973)).

Importantly, the majority's reading of the statute contradicts its plain text. It allows a judge to find for herself any aggravating factors, only to be overturned if a different judge guesses that a jury would have reached a different result. *See State v. Lawrence*, 365 N.C. 506, 513 (2012) (explaining the harmless error standard for federal constitutional and other legal errors). That system of review sidelines any role for the jury in a statutory scheme where the General Assembly gave the essential task to "only" the jury. *See* N.C.G.S. § 20-179(a1)(2). Such a holding contradicts the

"basic rule" of statutory interpretation to "ascertain and effectuate the intent of the legislat[ure]." *See Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629 (1980).

Moreover, section 20-179's sentencing scheme and overall structure reaffirms that harmless error review is not the right test. The provision details extensive, special instructions for convening, selecting, and impaneling the jury to find any aggravating factors, and instructs trial courts on how to impanel a new jury if the jury from the guilt phase is unable to reconvene to hear evidence on the aggravating factors issue. N.C.G.S. § 20-179(a1)(2)–(3). Once factors are found by the jury, the judge then has the responsibility to weigh them to determine the correct level of punishment. N.C.G.S. § 20-179(a1)(2), (d)–(f). That distinctive role for the judge regarding the jury's findings reaffirms that the only proper remedy where a jury failed to find aggravating factors in the first place is to remand for a new sentencing hearing for a jury to find those factors. Otherwise, the judge is improperly supplanting the jury's role and transgressing its otherwise circumscribed role. A new sentencing hearing for such statutory errors better comports with the statute's structure which assigns different actors to different decision-making roles, in addition to being consistent with the plain, clear language of the text.

   2. ***Even if harmless error were the correct standard, the error in Mr. King's case is prejudicial because it affected his punishment level, and resentencing is the correct remedy.***

Mr. King further argues that if harmless error is the correct standard, then the

lower court's error was prejudicial because it affected the level of punishment imposed on him. I agree and would hold that, at the very least, a trial court's error prejudices a defendant where it affects the defendant's sentencing level.

In DWI cases, correct application of the statute is essential to determine the level at which a defendant is sentenced. Section 20-179's sentencing scheme is "systematic and tiered" and does not afford trial judges discretion in sentencing. *Geisslercrain*, 233 N.C. App. at 190 (cleaned up). This is in contrast to a provision in the Structured Sentencing Act, N.C.G.S. § 15A-1340.16(a), which grants the trial court discretion to sentence in the presumptive range, even when aggravating factors are present, and discretion to depart from the presumptive range, even when only mitigating factors are properly found, *id.* (noting that "the decision to depart from the presumptive range is in the discretion of the court"); *see also Geisslercrain*, 233 N.C. App. at 192 ("Under the Structured Sentencing Act the trial court has the discretion to sentence a defendant within the presumptive range even where only mitigating factors are properly found."); *accord State v. Norris*, 360 N.C. 507, 514 (2006).

No similar discretion applies under section 20-179. For example, if there are no aggravating or mitigating factors present, then the trial court must impose a Level Four punishment. *Geisslercrain*, 233 N.C. App. at 191; *see also* N.C.G.S. § 20-179(f)(2). The court must impose a Level Three punishment if aggravating factors substantially outweigh any mitigating factors, *id.* at (f)(1), and it must impose Level Five punishment if mitigating factors substantially outweigh any aggravating

factors, *id.* at (f)(3). Punishment corresponds with these different tiers: Level Three punishment imposes a fine of up to $1,000 and up to six months of imprisonment, *id.* at (i), while a Level Five punishment imposes a fine of up to $200 and a maximum term of sixty days of imprisonment, *id.* at (k). Put simply, the finding of aggravating and mitigating factors directly dictates the mandatory punishment level, which directly affects how the defendant is penalized.

In this case, but for the trial court's reliance on the three aggravating factors, which were not found by a jury, the trial court would have been required to impose a lesser Level Four punishment, not the harsher Level Three punishment it imposed on Mr. King. *See Geisslercrain*, 233 N.C. App. at 190. Mr. King suffered prejudicial error from the trial court's improper finding of aggravating factors because his punishment was more severe than it otherwise would have been had the trial court stayed within its constitutional and statutory lane. *Cf. Glover v. United States*, 531 U.S. 198, 200 (2001) (holding that a showing of an increased prison sentence can establish prejudice for a Sixth Amendment ineffective assistance of counsel claim).

Importantly, under this approach, not every case in which the trial court erroneously finds an aggravating factor for itself will require reversal. For example, if the State had provided notice to Mr. King of any other aggravating factor in his case and proven it to the jury, then the trial court's error in finding the "especially reckless" aggravating factor would not have been prejudicial because it would not have affected Mr. King's sentencing level. That is because the Superior Court found

no mitigating factors in his case. And in the absence of any mitigating factors, the aggravating factors would necessarily "substantially outweigh any mitigating factors," and the court would be required to impose a Level Three punishment. N.C.G.S. § 20-179(f)(1); *see also Geisslercrain*, 233 N.C. App. at 191 ("[I]f there are only aggravating factors present—and no mitigating factors present—then the aggravating factors 'substantially outweigh' the mitigating factors . . . as a matter of law . . . ."). Thus, it follows that whether an error is prejudicial is based on whether there are other properly found mitigating or aggravating factors, and accordingly, not every case will result in a per se reversal. Put another way, under this reading, prejudice is not automatically presumed. Instead, prejudice is present when a trial court's error affects the level of punishment imposed. *See* N.C.G.S. § 20-179(f); *Geisslercrain*, 233 N.C. App. at 191.[1]

Such prejudice occurred here, when the trial court in Mr. King's case

---

[1] Related to this point, it is unclear how *Geisslercrain* is inconsistent with the majority's holding today such that it stands to be "overruled" at all. *Geisslercrain* did not announce a reversible error standard for section 20-179. Instead, it held that because the trial court found for itself an aggravating factor, it improperly sentenced the defendant to a harsher punishment (i.e., the defendant was prejudiced), and it remanded for the trial court to resentence the defendant at the less harsh punishment level. *Geisslercrain*, 233 N.C. App. at 192, 194. *Geisslercrain* thus fits neatly within a harmless error approach to violations of subsection 20-179(a1)(2).

To the extent the majority does see itself as overruling *Geisslercrain*, it appears to adopt a rule that a defendant cannot establish prejudice by showing that the trial judge's statutory violation led it to impose an enhanced punishment. Such a definition of prejudice makes it nearly impossible to show prejudice. While the majority dismisses this concern as simply a re-litigation of the issue of whether the statute goes beyond *Blakely*, its conflation of the statute with the constitutional rule sows confusion as to what exactly a defendant must show to win a resentencing when a trial judge violates subsection 20-179(a1)(2).

incorrectly found, for itself, the presence of three aggravating factors. The subject of this appeal relates specifically to the "especially reckless" aggravating factor, the only factor the State gave notice to Mr. King that it intended to prove. *See* N.C.G.S. § 20-179(a1)(1). Under harmless error review for a federal constitutional violation, this Court is tasked with determining if the evidence in the record "against the defendant was so 'overwhelming' and 'uncontroverted' that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt." *Blackwell*, 361 N.C. at 49. Simply put, "[b]efore a court can find a Constitutional error to be harmless it must be able to declare a belief that such error was harmless beyond a reasonable doubt." *Id*. at 49–50 (quoting *State v. Heard*, 285 N.C. 167, 172 (1974)).[2]

Assuming that the harmless error standard applies to the DWI sentencing statute, the error in Mr. King's case was not harmless. Our courts have stated that "[i]mpaired driving is in and of itself reckless and dangerous." *State v. Mack*, 81 N.C. App. 578, 585 (1986) (cleaned up). "Therefore, to determine whether there [is] enough evidence to prove the defendant's driving was . . . especially reckless[,] . . . [the court] must focus on whether the facts of [the] case disclose excessive aspects of

---

[2] In a curious maneuver, the majority goes from vigorously insisting that subsection 20-179(a1)(2) only "codifi[ed] . . . *Blakely*" to asserting that a defendant's challenge under that provision is not, in fact, a challenge of constitutional error. Instead, it holds that the stricter harmless error standard for nonconstitutional challenges applies, which places the burden on the defendant, since the majority says Mr. King sought relief on the basis of the statute. I cannot make sense of this double standard, which seems designed only to implement procedural hurdles that make it harder for criminal defendants to vindicate their constitutional rights.

recklessness . . . not normally present in the offense of impaired driving . . . ." *Id.* (cleaned up). The evidence in Mr. King's case does not conclusively reach this standard.

While the State argues that the evidence in Mr. King's case was "uncontroverted" such that the trial judge could substitute its own judgment for that of the jury, the factual nuances present here do not support that conclusion. The evidence in Mr. King's case did not show the signs of especially reckless driving often present. Namely, it did not show that he drove at an excessive speed, drove off the road, or that he hit anyone. There is also testimony from Deputy Martin that Mr. King stopped at a red light and complied with Deputy Martin's instructions pulling over "very quickly" and without any problem. Contradictory testimony was also offered by Trooper Onderdonk and Deputy Martin. While Trooper Onderdonk testified that Mr. King was driving between two lanes and almost hit another car, Deputy Martin testified that when he pulled Mr. King over, "[t]here was nobody around . . . other than the off-duty . . . trooper behind me" and that he did not recall the incident Trooper Onderdonk referenced. Moreover, at trial Deputy Martin testified that he pulled Mr. King over based on the information he received from the dispatch officer and that without that information he could not say if he would have stopped Mr. King at all.[3] Accordingly, it is possible that based on the evidence the

---

[3] Although it is true that Deputy Martin stated that Mr. King was driving in the middle of the roadway "[p]retty much the whole time," this statement was made during the suppression hearing and was not presented to the jury.

jury received at trial, it would not have found the "especially reckless" driving aggravating factor.

Moreover, although some of the aggravating factors listed in subsection 20-179(d) are based entirely on objective factors (e.g., driving with a revoked driver's license), the "especially reckless" driving aggravating factor depends on discretionary judgments about all of the circumstances. Based on this alone, it is questionable whether a jury would have found that Mr. King was "especially reckless" in his driving. In light of the facts of this case, which are not so " 'overwhelming' and 'uncontroverted,' " it is truly unknown whether "any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt." *See Blackwell*, 361 N.C. at 49.

The majority may agree with many of these points. Because it only remands this case to the Court of Appeals for a harmless error determination, the Court of Appeals is seemingly free to adopt parts of the approach I outline here. But that raises another question: why does the majority remand this case to the Court of Appeals in the first place? This Court is equally as capable of assessing prejudicial error based on the record before us as the intermediate appellate court. It does not serve the interests of judicial economy and the expeditious resolution of cases to subject this matter to yet further appellate review.

With that in mind, I would hold that if the harmless error standard applies, prejudice occurs when the evidence shows that a trial court's error affected the

defendant's sentencing level, and I would remand this case to the trial court for a new sentencing hearing.

## II.    Conclusion

Accordingly, I would affirm the Court of Appeals decision and hold that subsection 20-179(a1)(2) should be applied as written and thus, the harmless error standard does not apply. Additionally, because the aggravating factors in Mr. King's case should have been found by a jury and because the trial court's misapplication of the statute impacted the level Mr. King was sentenced at, his case should be remanded for resentencing. Alternatively, even under the harmless error standard this Court has chosen to import into the statute, a policy choice different from that made by the General Assembly, I would hold that the trial court finding—rather than the jury finding—that Mr. King's driving was "especially reckless" was not harmless beyond a reasonable doubt. This is because based on these facts, the jury could find that Mr. King's driving was not especially reckless, which in turn affected the level at which Mr. King was sentenced.

Justice RIGGS joins in this dissenting opinion.